# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1120**
**CA 10-00292**
PRESENT: SCUDDER, P.J., CENTRA, FAHEY, PERADOTTO, AND LINDLEY, JJ.

---

PAUL MARINACCIO, SR., PLAINTIFF-RESPONDENT,

V                                           MEMORANDUM AND ORDER

TOWN OF CLARENCE, DEFENDANT,
AND KIEFFER ENTERPRISES, INC.,
DEFENDANT-APPELLANT.
(APPEAL NO. 1.)

---

GOLDBERG SEGALLA LLP, BUFFALO, PHILLIPS LYTLE LLP (MICHAEL B. POWERS OF COUNSEL), FOR DEFENDANT-APPELLANT.

LIPSITZ GREEN SCIME CAMBRIA LLP, BUFFALO (JOSEPH J. MANNA OF COUNSEL), FOR PLAINTIFF-RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (Frederick J. Marshall, J.), entered November 24, 2009. The judgment awarded plaintiff money damages against defendant Kieffer Enterprises, Inc. upon a jury verdict.

It is hereby ORDERED that the judgment so appealed from is affirmed without costs.

Memorandum: Plaintiff commenced this action asserting causes of action for, inter alia, trespass and private nuisance and seeking damages for flooding on his property allegedly caused by the intentional flow of water onto his property. The water originated from a subdivision (hereafter, subdivision) developed by defendant Kieffer Enterprises, Inc. (KEI) on land adjacent to plaintiff's property located in defendant Town of Clarence (Town). Following a trial, the jury returned a verdict in favor of plaintiff on liability. The jury awarded plaintiff a total of $1,642,000 in compensatory damages, as well as punitive damages of $250,000 against KEI. In appeal No. 1, KEI appeals, as limited by its main brief, from that part of the judgment awarding plaintiff punitive damages against it. In appeal No. 2, KEI appeals from the order settling the record in appeal No. 1.

Addressing first the order in appeal No. 2, we agree with KEI that Supreme Court erred by excluding from the record the opposing papers and reply papers with respect to plaintiff's motion in limine seeking to preclude the testimony of an appraisal expert for the Town, as well as the order determining that motion (see CPLR 5526; 22 NYCRR 1000.4 [a] [2]). We thus modify the order in appeal No. 2

accordingly.  Contrary to KEI's contention, however, we conclude under the circumstances of this case that the court properly excluded certain superseded pleadings from the record in appeal No. 1 (*see Aikens Constr. of Rome v Simons*, 284 AD2d 946, 947; *Millard v Delaware, Lackawanna & W. R.R. Co.*, 204 App Div 80, 82).

Turning back to appeal No. 1, we view the points in KEI's main brief that the court "erred in refusing to dismiss the punitive damages claim where no evidence was offered to prove that [KEI acted] intentionally, maliciously, or with near criminal intent" and that "the evidence offered by plaintiff [did not meet] the 'strict' standard of proving that [KEI] acted maliciously, willfully and with near criminal intent" as constituting a contention that the award of punitive damages is not supported by legally sufficient evidence. " '[T]o recover punitive damages for trespass on real property, [a plaintiff has] the burden of proving that the trespasser acted with actual malice involving an intentional wrongdoing, or that such conduct amounted to a wanton, willful or reckless disregard of plaintiff['s] rights' " (*Western N.Y. Land Conservancy, Inc. v Cullen*, 66 AD3d 1461, 1463, *appeal dismissed* 13 NY3d 904, *lv denied* 14 NY3d 705, *rearg denied* 15 NY3d 746; *see West v Hogan*, 88 AD3d 1247, 1249-1250).  To establish its entitlement to relief on its legal insufficiency contention, KEI "had to [demonstrate] . . . 'that there [was] simply no valid line of reasoning and permissible inferences which could possibly lead rational [persons] to the conclusion reached by the jury on the basis of the evidence presented at trial' " (*Winiarski v Harris* [appeal No. 2], 78 AD3d 1556, 1557, quoting *Cohen v Hallmark Cards*, 45 NY2d 493, 499).

Here, there is a valid line of reasoning supporting the jury's conclusion that KEI's conduct was sufficiently egregious to warrant an award of punitive damages.  The evidence presented at trial establishes that, in conjunction with the approval process for the third phase of the subdivision (hereafter, Phase III), KEI's sole owner, Bernard G. Kieffer (Kieffer), retained an engineering firm to prepare plans for that part of the subdivision.  Those plans included drainage calculations, which were intended to estimate the amount of water that would flow from the subdivision's roads to storm sewers, and from there to a mitigation pond and into a shallow furrow that traversed plaintiff's property.

Prior to the development of Phase III, however, there were drainage problems at the subdivision.  By June 9, 2000, the Town became cognizant of those drainage issues, and recognized that its ability to extend and maintain ditches to a road that formed the northern boundary of plaintiff's property was essential to resolving those problems.  Moreover, the Town and Kieffer knew that, as a result of the additional construction in the subdivision, "there [would] be more water dumping onto adjoining properties to the north and west," i.e., in the area of plaintiff's property, and the Town noted that it would "contact [plaintiff] regarding an easement along his west property line."  KEI also hired a contractor to clean the furrow both by backhoe and by hand as a condition of proceeding with Phase III.

     The parties do not dispute that the Town and Kieffer did not obtain plaintiff's permission to allow water to flow onto his property, and Phase III was approved, subject to several conditions designed to facilitate drainage in the area, on June 21, 2000.  During Phase III construction, KEI built a pond next to plaintiff's property, which was fed by storm sewers and drained by two 12-inch pipes that, according to Kieffer, were intended to release water into the furrow on plaintiff's property.  Plaintiff testified at trial that the outflow pipes were installed approximately one foot inside his property line.  According to the trial testimony of plaintiff's expert engineer, KEI routed more water from Phase III to plaintiff's property than was called for by its drainage plans.

     After the construction of Phase III, the nature of plaintiff's property changed.  Plaintiff's wetlands consultant testified at trial that he estimated that there were only six acres of wetland on plaintiff's property in 2001, and that the wetland subsequently expanded to the point that plaintiff's property contained 19.5 acres of wetland in 2006; 24.94 acres of wetland in 2008; and 30.23 acres of wetland by 2009.  Moreover, plaintiff's wetlands consultant observed a berm on part of plaintiff's property in 2006, which plaintiff had discovered in 2000 or 2001 and characterized as about 500 or 600 feet long.  Plaintiff's wetlands consultant believed that the berm was the result of "ditch maintenance" several years earlier, at which point spoils from the furrow were placed on the east side of the furrow, i.e., on the side of the furrow opposite the subdivision.  He concluded that migrating water on plaintiff's property was blocked by the berm, and that the growth of the wetland on plaintiff's property was due in part to the berm and in part to the presence of more water on the site.  We conclude that the foregoing evidence is legally sufficient to allow the jury to conclude that KEI knowingly and intentionally disregarded plaintiff's property rights in a manner that was either " 'wanton, willful or reckless' " (*Cullen*, 66 AD3d at 1463; *see Vacca v Valerino*, 16 AD3d 1159, 1160; *Fareway Hgts. v Hillock*, 300 AD2d 1023, 1025; *see generally Winiarski*, 78 AD3d at 1557).  For the same reasons, we conclude that the court properly denied KEI's motion to dismiss the punitive damages claim at trial (*see generally Golonka v Plaza at Latham*, 270 AD2d 667, 670-671).

     Likewise, we reject KEI's contention that the court erred in concluding that KEI's failure to plead a drainage easement as an affirmative defense constituted a waiver thereof (*see Cronk v Tait*, 279 AD2d 857, 859; *see generally Griffith Energy, Inc. v Evans*, 85 AD3d 1564, 1566).  The easement in question permitted the Town to maintain a drainage ditch on plaintiff's property "for the disposal and dispersal of surface waters from the adjoining premises," but was considered for the first time on the first day of trial.  Moreover, based on a land survey prepared by the Town in 1994 upon which plaintiff relied in purchasing his property in 1995, the easement was shown to be on the east side of plaintiff's property, i.e., the opposite side of the property where KEI drained water onto that land, and thus the easement is irrelevant to this case.  Therefore, even assuming, arguendo, that KEI's further contentions with respect to the

easement are properly before us (*see Murdoch v Niagara Falls Bridge Commn.*, 81 AD3d 1456, 1457, *lv denied* 17 NY3d 702; *see generally* CPLR 5501 [a] [3]), we also conclude that those contentions lack merit.

KEI failed to preserve for our review its additional challenge to the court's jury instruction to disregard evidence that KEI acted reasonably in reliance on engineers and good engineering practices (*see* CPLR 4110-b; *Howlett Farms, Inc. v Fessner*, 78 AD3d 1681, 1682, *lv denied* 17 NY3d 710), as well as its challenge to the verdict sheet (*see MacKillop v City of Syracuse*, 48 AD3d 1197, 1198). We decline KEI's request to review those challenges and other unpreserved issues that it raises on appeal in seeking a new trial. First, that request is raised for the first time in KEI's reply brief and thus is not properly before us (*see Pieri v B&B Welch Assoc.*, 74 AD3d 1727, 1730). Second, "[a] court should grant a new trial in the interest of justice 'only if there is evidence that substantial justice has not been done . . . as would occur, for example, where the trial court erred in ruling on the admissibility of evidence, there is newly discovered evidence, or there has been misconduct on the part of the attorneys or jurors' " (*Butler v County of Chautauqua*, 277 AD2d 964, 964), and none of those circumstances is present here.

Finally, we have considered KEI's remaining contentions, which include challenges to the admission of testimony as to the value of plaintiff's property, to that part of the jury charge with respect to causation, to the alleged inconsistency of the verdict, and to the preclusion of the testimony of the Town's damages expert. To the extent that those challenges are properly before us (*see* CPLR 5501 [a] [3]; *Krieger v McDonald's Rest. of N.Y., Inc.*, 79 AD3d 1827, 1828, *lv dismissed* 17 NY3d 734; *Howlett Farms, Inc.*, 78 AD3d at 1682-1683; *Ciesinski v Town of Aurora*, 202 AD2d 984, 985), we conclude that they are without merit. We further note only that none of KEI's remaining contentions is relevant to the ultimate issue before us on appeal, i.e., the propriety of the punitive damages award (*cf. Nickerson v Te Winkle*, 161 AD2d 1123, 1123-1124).

All concur except SCUDDER, P.J., and PERADOTTO, J., who dissent in part and vote to modify in accordance with the following Memorandum: We respectfully dissent in part and would modify the judgment in appeal No. 1 by vacating the award of punitive damages. In our view, this is not an "exceptional" case where punitive damages are warranted (*Ross v Louise Wise Servs., Inc.*, 8 NY3d 478, 489; *see Smith v Fitzsimmons*, 180 AD2d 177, 181).

The facts are ably set forth by the majority, and we shall not repeat them here. We note at the outset that there is no question that plaintiff established his cause of action for trespass by demonstrating that defendant Kieffer Enterprises, Inc. (KEI) "intentionally [discharged water] onto the land belonging to the plaintiff[] without justification or permission" (*Carlson v Zimmerman*, 63 AD3d 772, 773; *see generally* PJI 3:8). However, "[s]omething more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such

as spite or malice, or a fraudulent or evil motive on the part of the defendant[s], or such a conscious and deliberate disregard of the interests of others that the conduct may be called [willful] or wanton" (*Prozeralik v Capital Cities Communications*, 82 NY2d 466, 479 [internal quotation marks omitted]).  Specifically, "[p]unitive damages are permitted [only] when the defendant[s'] wrongdoing is not simply intentional but evince[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations . . . [P]unitive damages may be sought when the wrongdoing was deliberate and has the character of outrage frequently associated with crime" (*Ross*, 8 NY3d at 489 [internal quotation marks omitted]).

Although there is no question that KEI discharged water into the furrow and that it did so with knowledge and intent, we conclude that there is insufficient evidence in this record that KEI was motivated by maliciousness or vindictiveness or that KEI engaged in such " 'outrageous or oppressive intentional misconduct' " to warrant a punitive damages award (*id.; cf. West v Hogan*, 88 AD3d 1247, 1249-1250; *Doin v Champlain Bluffs Dev. Corp.*, 68 AD3d 1605, 1613-1614, *lv dismissed* 14 NY3d 832; *Western N.Y. Land Conservancy, Inc. v Cullen*, 66 AD3d 1461, 1463, *appeal dismissed* 13 NY3d 904, *lv denied* 14 NY3d 705, *rearg denied* 15 NY3d 746; *Ligo v Gerould*, 244 AD2d 852, 853).  The record reflects that part of the furrow was located on land belonging to KEI, while other parts of the furrow traversed plaintiff's property.  At least some of the water from the undeveloped property that ultimately became the subdivision naturally flowed into that furrow.  Prior to developing the third phase of the project (hereafter, Phase III), KEI's sole owner, Bernard G. Kieffer, retained an engineering firm to prepare, inter alia, a drainage plan.  The plan included drainage calculations, which were intended to estimate the amount of water that would flow from the subdivision's roads to storm sewers, and from there to a retention pond and into the furrow. Kieffer relied on the expertise of his engineers to prepare an appropriate drainage plan, and that plan was submitted to, and approved by, the Engineering Department of defendant Town of Clarence (Town) and the Town Board.  Indeed, the record reflects that KEI developed Phase III in accordance with all of the Town's requirements. With respect to the easement, the Town advised Kieffer that it would obtain an easement from plaintiff for the increased water flow onto his property.  While Kieffer may have been negligent in failing to ensure that the Town followed through with its expressed intention, we cannot conclude that such failing warrants an award of punitive damages.  At trial, Kieffer testified that it was not his intent to interfere with the use of plaintiff's property, and our review of the record discloses no evidence to the contrary.

In sum, "punitive damages are awarded not for the unintended result of an intentional act, but for the conscious disregard of the rights of others or for conduct so reckless as to amount to such disregard" (*Hartford Acc. & Indemn. Co. v Village of Hempstead*, 48 NY2d 218, 227-228).  We conclude that punitive damages are not justified on this record because the harm in this case—the flooding of plaintiff's property—was not intended by KEI (*see id.; cf. West*, 88

AD3d at 1249-1250; *Fareway Hgts. v Hillock*, 300 AD2d 1023, 1025). Rather, the flooding was an unintended result of KEI's intentional conduct, i.e., discharging water into the furrow and, thus, does not warrant an award of punitive damages (*see Hartford Acc. & Indemn. Co.*, 48 NY2d at 227-228).

Entered:  December 30, 2011                    Frances E. Cafarell
                                               Clerk of the Court