(June 16, 2017)

PAUL MARINACCIO, SR., Appellant, v TOWN OF CLARENCE, Respondent. [57 NYS3d 590]—

Appeal from an order of the Supreme Court, Erie County (Frederick J. Marshall, J.), entered January 14, 2016. The order granted the motion of defendant to dismiss the complaint and dismissed the complaint.

It is hereby ordered that the order so appealed from is modified on the law by denying the motion in part and reinstating the first, second, and sixth causes of action, and as modified the order is affirmed without costs.

Memorandum: As we explained in a prior appeal, Marinaccio v Town of Clarence (90 AD3d 1599 [2011], revd 20 NY3d 506 [2013], rearg denied 21 NY3d 976 [2013]), following a jury trial, plaintiff was awarded compensatory damages in the amount of $1,642,000 in an action asserting causes of action for, inter alia, trespass and private nuisance, concerning flooding on his property that was caused by water flowing from a subdivision on land adjacent to plaintiff's land. Following the trial, the parties entered into a confidential settlement agreement (agreement), pursuant to which defendant would pay plaintiff $1,200,000, and plaintiff would deed to defendant a 30-foot strip of land along the border of his property for defendant's

use in constructing a drainage ditch for the purpose of diverting the storm water from the subdivision into the drainage ditch.

The agreement also contains a release by which plaintiff "irrevocably and unconditionally remises, releases, and forever discharges . . . [defendant] . . . of and from all, and all manner of action and actions, cause and causes of action, suits, . . . damages known or unknown, . . . [and] claims and demands whatsoever, in law or in equity, . . . relating to past, present or future damages related to the ongoing intrusion of storm water to [plaintiff's property], including all claims sounding in negligence, trespass, [and] nuisance . . . [Plaintiff] expressly releases and waives any and all claims of economic damages of any sort . . . with respect to [his property]," with certain reservations. The agreement further provides that plaintiff "has been fully compensated for all damages to [his property]," and that defendant "shall promptly take such actions as may be deemed necessary to . . . undertake the construction of a drainage ditch or facility within the lands comprising the Drainage Deed . . . If, within four [4] years of the execution of this Agreement, [defendant] fails to obtain all necessary approvals, or if the described work is, in the opinion of [defendant], not economically feasible, the property transferred herein will revert to [plaintiff] . . . The Court in the Action shall retain continuing jurisdiction to hear any and all disputes arising from or related to this Agreement . . . [T]he prevailing party in any such action shall be entitled to recover its costs and reasonable attorneys' fees from the other party."

It is undisputed that plaintiff transferred the property to defendant and that defendant constructed a drainage ditch, which plaintiff alleges is not sufficient to drain the water from the subdivision without flooding his property. Plaintiff commenced the instant action alleging, inter alia, breach of contract, negligence and nuisance. Supreme Court granted defendant's motion pursuant to CPLR 3211 (a) (1), (5) and (7) and dismissed the complaint in its entirety, based upon the release contained in the agreement and the lack of any promise by defendant that the ditch would divert all storm waters from plaintiff's land.

It is well settled that settlement agreements and general releases are "governed by principles of contract law" (*Mangini v McClurg*, 24 NY2d 556, 562 [1969]; *see Abdulla v Gross*, 124 AD3d 1255, 1257 [2015]). Viewing the facts as alleged in the first and second causes of action, for breach of contract, in the light most favorable to plaintiff and affording plaintiff all favor-

able inferences (*see Whitebox Concentrated Convertible Arbitrage Partners, L.P. v Superior Well Servs., Inc.*, 20 NY3d 59, 63 [2012]), we conclude that the release does not "evince an intention to encompass the distinct contractual obligations defendant undertook upon which plaintiff's breach of contract causes of action are premised" (*Murray-Gardner Mgt. v Iroquois Gas Transmission Sys.*, 229 AD2d 852, 854 [1996]), i.e., the breach of the settlement agreement itself. Viewing the facts as alleged in the sixth cause of action, for attorneys' fees, in the light most favorable to plaintiff and affording him all reasonable inferences (*see generally Whitebox Concentrated Convertible Arbitrage Partners, L.P.*, 20 NY3d at 63), we likewise conclude that the court erred in granting defendant's motion with respect to that cause of action. We therefore modify the order accordingly.

We reject plaintiff's contention that the court erred in granting those parts of defendant's motion with respect to the fourth and fifth causes of action, for negligence and nuisance, respectively, inasmuch as those causes of action were encompassed by the release (*see* CPLR 3211 [a] [5]; *see generally Abdulla*, 124 AD3d at 1257), and the third cause of action, for breach of the covenant of good faith, inasmuch as it is premised on the same allegations and seeks the same relief as the first and second causes of action, for breach of contract (*see DiPizio Constr. Co., Inc. v Niagara Frontier Transp. Auth.*, 107 AD3d 1565, 1566-1567 [2013]).

All concur except Peradotto, J., who dissents in part and votes to affirm in the following memorandum.

Peradotto, J. (dissenting). I respectfully dissent in part inasmuch as I cannot agree with the majority that Supreme Court erred when, in reliance on the release in the parties' agreement, it dismissed plaintiff's first and second causes of action, for breach of contract, and his sixth cause of action, for attorneys' fees. In my view, the release discharges plaintiff's causes of action, and I would thus affirm the order.

Plaintiff brought suit after his property in Clarence sustained flooding and damages due to the development of a subdivision abutting his property (*Marinaccio v Town of Clarence*, 90 AD3d 1599 [2011], *revd* 20 NY3d 506 [2013], *rearg denied* 21 NY3d 976 [2013]). Plaintiff obtained a jury verdict in his favor and was awarded $1,642,000 in compensatory damages, jointly and severally, against defendant and the developer for, among other things, the taking of 38.5 acres of his property. On December 20, 2010, while the judgment was still subject to appeal, the parties entered into an agreement settling the action, which

included the release. As a condition precedent to defendant's payment of the settlement, plaintiff agreed to deed defendant a strip of his land so that defendant could divert storm water from the subdivision into a drainage ditch that defendant would construct. Plaintiff also reserved the right to drain water from his property into the drainage ditch constructed by defendant. Plaintiff subsequently commenced the instant action alleging, among other things, that defendant breached the agreement by constructing an inadequate drainage ditch, resulting in continued drainage of water onto his property, and by retaining title to the deeded area despite failing to meet the contingency of constructing an adequate ditch. In my view, Supreme Court properly granted defendant's motion to dismiss the complaint.

It is well settled that, "[w]hen a court rules on a CPLR 3211 motion to dismiss, it 'must accept as true the facts as alleged in the complaint and submissions in opposition to the motion, accord plaintiff[ ] the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory' " (*Whitebox Concentrated Convertible Arbitrage Partners, L.P. v Superior Well Servs., Inc.*, 20 NY3d 59, 63 [2012]). "The motion may be granted if 'documentary evidence utterly refutes [the] plaintiff's factual allegations' . . . , thereby 'conclusively establishing a defense as a matter of law' " (*id.*; *see* CPLR 3211 [a] [1]). "One example of such proof is an unambiguous contract that indisputably undermines the asserted causes of action" (*Whitebox Concentrated Convertible Arbitrage Partners, L.P.*, 20 NY3d at 63), and such a contract may be in the form of a release (*see Darby Group Cos., Inc. v Wulforst Acquisition, LLC*, 130 AD3d 866, 867 [2015]; *see also* CPLR 3211 [a] [5]).

"[W]here 'a release is unambiguous, the intent of the parties must be ascertained from the plain language of the agreement' " (*Dommer Constr. Corp. v Savarino Constr. Servs. Corp.*, 85 AD3d 1617, 1618 [2011]; *see Northrup Contr. v Village of Bergen*, 129 AD2d 1002, 1003 [1987]; *see generally Ellington v EMI Music, Inc.*, 24 NY3d 239, 244-245 [2014]). "In construing a general release it is appropriate to look to the controversy being settled and the purpose for which the release was executed[,] . . . [and] a release may not be read to cover matters which the parties did not desire or intend to dispose of" (*Bugel v WPS Niagara Props., Inc.*, 19 AD3d 1081, 1082 [2005] [internal quotation marks omitted]). Thus, in determining the scope of a release, the document should be viewed "as a whole and in light of its stated purpose" (*id.* at 1083; *see Corzatt v Taylor*, 126 AD3d 1505, 1505-1506 [2015]).

Plaintiff asserted in his complaint that, "[i]n essence, the purpose of the agreement was to remedy the excessive drainage onto plaintiff's property that resulted from the [subdivision] development," and that "the purpose of the drainage ditch was to transfer drainage from the [subdivision] development to [a road], without the drainage entering plaintiff's property." The agreement, however, refutes that assertion. The stated purpose of the agreement is expressed in the recitals in the third "whereas" clause (*see OneBeacon Ins. Co. v Uniland Partnership of Delaware, L.P.*, 121 AD3d 1548, 1548-1549 [2014]; *see also* Black's Law Dictionary 1462 [10th ed 2014], recital). The clause provides that, "in order to avoid the cost, expense and uncertainty attendant to any further litigation, the parties wish to settle and resolve all matters related to the [a]ction." Consistent with the purpose of settling the action to avoid costs and uncertainty of further litigation—which included the pending (but not yet perfected) appeal to which plaintiff's judgment was subject at that time—plaintiff agreed to settle for a lump sum payment of $1,200,000 in guaranteed money, and the parties further agreed to enter a stipulation discontinuing the action with prejudice. Indeed, on the same day that plaintiff signed the agreement, the parties signed a stipulation that discontinued all claims with the exception of plaintiff's claim and judgment against the developer for punitive damages. By settling the case, plaintiff avoided the uncertainty of subjecting his judgment to appeal and was able to retain his property despite the fact that the jury had concluded that a taking occurred (*see generally O'Brien v City of Syracuse*, 54 NY2d 353, 357 [1981]; *Feder v Village of Monroe*, 283 AD2d 548, 549 [2001]). In fact, defendant agreed to release plaintiff from, among other things, any taking claims it possessed against him.

Plaintiff also agreed to deed defendant a strip of land so that defendant could construct a drainage ditch "for the purpose of diverting storm water from the" subdivision into that ditch. Contrary to plaintiff's allegation, there is no requirement in the agreement that the drainage ditch completely divert all water from the subdivision into the ditch without any drainage entering plaintiff's property. Moreover, there is no dispute that the drainage ditch was constructed, and plaintiff does not make any claim that the requirements of construction that were stated in the agreement were not fulfilled. Instead, plaintiff now claims that defendant breached the agreement because it constructed an inadequate drainage ditch, resulting in continued drainage of water onto plaintiff's property. Plaintiff, however, was fully compensated for the ongoing intrusion of

storm water onto his property, which resulted in a finding that a taking had occurred, and in exchange he forever discharged any claims against defendant, including but not limited to those relating to past, present or future damages related to the ongoing intrusion of storm water onto the property.

More particularly, the release provides in relevant part that plaintiff "irrevocably and unconditionally remises, releases, and forever discharges . . . [defendant] of and from all, and all manner of action and actions, cause and causes of action, suits, . . . damages known or unknown, apparent and not apparent, present or future, . . . [and] claims and demands whatsoever, in law or in equity, . . . including, but not limited to, . . . any and all claims that were or could have been asserted in the [first lawsuit], and . . . including but not limited to all claims, past, present or future, relating to past, present or future damages related to the ongoing intrusion of storm water to [plaintiff's property], including all claims sounding in negligence, trespass, [and] nuisance." The paragraph continues by stating that plaintiff "expressly releases and waives any and all claims of economic damages of any sort, now existing or arising at any point in the future, with respect to [plaintiff's property], reserving only: (1) [a claim by plaintiff—in the event that the land deeded to defendant for construction of the ditch reverts to plaintiff—that an easement claimed by defendant] does not exist and/or is not effective; and (2) the right to bring an equitable claim for injunctive relief only, should [defendant] by means of an artificial drainage system, other than that proposed in paragraphs nine . . . and eleven . . . herein [relating to construction of the drainage ditch], as opposed to natural drainage, cause storm water intrusion onto [plaintiff's property] causing damage thereto."

Contrary to plaintiff's contention, the canon of ejusdem generis does not limit the broad scope of the release. Ejusdem generis is "[a] canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed" (Black's Law Dictionary 631 [10th ed 2014]). As we have explained, "[w]here . . . [a] release . . . contain[s] specific recitals as to the claims being released, and yet conclude[s] with an omnibus clause to the effect that the releasor releases and discharges all claims and demands whatsoever which he [or she] . . . may have against the releasee . . . , the courts have often applied the rule of ejusdem generis, and held that the general words of a release are limited by the recital of a particular claim" (*Camperlino v Bargabos*, 96

AD3d 1582, 1583-1584 [2012] [internal quotation marks omitted]).

Here, by contrast, the release does not conclude with an omnibus clause to the effect that plaintiff discharges all claims whatsoever that he has or may have against defendant. The general words of release come first, indicating an intent to release all claims, and those general words are followed by specific examples that fall within the scope of the general release. Critically, the specific examples are prefaced by the phrase "including but not limited to." Courts have long maintained that "the rule of *ejusdem generis* applies only if the provision in question does not express a contrary intent," and that, because "the phrase 'including, but not limited to' plainly expresses a contrary intent, the doctrine of *ejusdem generis* is inapplicable" to such a provision (*Cooper Distrib. Co., Inc. v Amana Refrig., Inc.*, 63 F3d 262, 280 [1995]; *see Cintech Indus. Coatings, Inc. v Bennett Indus., Inc.*, 85 F3d 1198, 1202-1203 [1996]; *Commissioner of Internal Revenue v Oswego Falls Corp.*, 137 F2d 173, 176 [1943]).

Based on the foregoing, I cannot agree with plaintiff that ejusdem generis applies here and that the parties' inclusion of specific examples of what is included in the general release (e.g., all claims in the first lawsuit and past, present and future claims concerning past, present and future damages related to ongoing intrusion of storm water onto the property) removes from the general release plaintiff's breach of contract claims regarding the alleged failure of the drainage ditch to remediate the ongoing intrusion of storm water onto plaintiff's property. Rather, the contractual language specifies that the general release includes specific types of claims, but is expressly not limited thereby. Similarly, contrary to plaintiff's reliance on the expressio unius maxim, the fact that the specific examples of claims that were encompassed by the release did not include breach of the agreement itself is of no moment inasmuch as the examples are nonexhaustive and do not limit the general release (*see e.g.* Glen Banks, New York Contract Law § 10:13 [28 West's NY Prac Series]; *Society for Advancement of Educ., Inc. v Gannett Co., Inc.*, 1999 WL 33023, *7, 1999 US Dist LEXIS 700, *20 [SD NY 1999]).

Moreover, in a separate paragraph acknowledging the release, plaintiff agreed that he "specifically acknowledges that by virtue of the payments set forth herein, he has been fully compensated for all damage to [his property] as well as for his alleged inability to develop the [property] which is the subject of the [first lawsuit] and [plaintiff] recognizes that he is forever

barred from making, among others, any such claims against [defendant and the developer] except as provided in paragraph 3, above," i.e., the release clause. Indeed, the release clause does provide certain claims that plaintiff retains, but those specifically enumerated exceptions do not include claims for breach of contract based upon the alleged inadequacy of the drainage ditch in preventing ongoing intrusion of storm water onto his property.

Rather, the only claims reserved in the release clause are (1) a claim regarding an easement that is not applicable here, and (2) "the right to bring an equitable claim for injunctive relief only, should [defendant] by means of an artificial drainage system, other than that proposed in paragraphs nine . . . and eleven . . . herein [relating to construction of the drainage ditch], as opposed to natural drainage, cause storm water intrusion onto [plaintiff's property] causing damage thereto." Thus, the release expressly reserved plaintiff's ability to seek injunctive relief if defendant caused water intrusion onto the property causing damage thereto by means of an artificial drainage system *other than* the drainage ditch to be constructed as proposed elsewhere in the agreement. In other words, the release reserved specific claims that plaintiff could make, contemplated that a drainage ditch would be constructed pursuant to the agreement, and expressly *excluded* from the reserved claims anything but injunctive relief for water intrusion caused by another artificial drainage system different from the agreed-upon drainage ditch. The release thus did not reserve for plaintiff his current breach of contract claims that defendant constructed an inadequate drainage ditch resulting in continued drainage of water onto plaintiff's property.

In sum, the unambiguous language of the general release governs here, and plaintiff is forever barred from making any claims whatsoever with respect to the ongoing intrusion of storm water onto his property, for which he was already fully compensated (*see generally Matter of Jana-Rock Constr. v New York State Dept. of Transp.*, 267 AD2d 686, 687 [1999]). The release reserved only certain claims for plaintiff to make against defendant, and his breach of contract claims are not among them. Present—Centra, J.P., Peradotto, DeJoseph, Curran and Scudder, JJ.